## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

WILLIAM A. WHITE,

    Petitioner,

v.

                            Civil Action No. 24-2122-TDC

SUSAN BROWN, *Warden*,

    Respondent.

## MEMORANDUM OPINION

Self-represented Petitioner William A. White, who is currently confined at the Federal Correctional Institution–Cumberland ("FCI–Cumberland") in Cumberland, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which he challenges a loss of good conduct credits as a result of a disciplinary action. After the Petition was fully briefed, pursuant to the Court's Order granting White's Motion for Leave to Take Discovery, ECF No. 18, Respondents arranged to have White to view the surveillance video at issue in this case, Respondents submitted the surveillance video to the Court, and the parties submitted supplemental briefs in relation to the video. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* Rules 1(b), 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DENIED.

## BACKGROUND

In the Petition, White asserts a violation of his due process rights under the Fifth Amendment to the United States Constitution relating to a disciplinary action that resulted in the

loss of good conduct credits. White previously filed a separate Petition alleging a due process violation arising from the same incident, which this Court dismissed without prejudice based on a failure to exhaust administrative remedies. *See White v. Carter*, No. 23-3360-TDC, 2024 WL 3362622, at *1–3 (D. Md. July 9, 2024). That ruling is incorporated here by reference. The parties do not dispute that White has now exhausted the available administrative remedies.

On August 28, 2023, White was assigned to cell 205 in Unit B-1 at FCI–Cumberland, which he shared with another inmate. The cell had a window, which allowed for a surveillance camera to record some of the events that occurred inside the cell. When White returned to his cell from the shower around 11:10 a.m., his cellmate entered the cell after him and punched him with a closed fist multiple times. White asserts that he only put his hands up to protect himself and that he did not strike his cellmate back. White claims that after the incident, while he was in Lieutenant Durant's office, he heard Lt. Durant tell "SIS Officer" Gary Freeman that the video recording did not show White "strike or attempt to strike" his cellmate. Pet. ¶ 7, ECF No. 1.

Freeman, however, submitted an incident report stating that after he became aware of the incident, he reviewed the surveillance video and observed White and his cellmate swinging closed fists at each other's head and torso areas. Freeman then observed White's cellmate leave the cell with his shirt off and walk upstairs to the TV room. White then left the cell "holding his face, with what appears to be blood on the side of his face." Incident Rep. at 1, Ans. Ex. 2 Att. A, ECF No. 7-2. Upon viewing this video, Freeman notified supervisors about the incident. White was then found to have sustained a swollen left eye and abrasions, while his cellmate had no visible injuries. White and his cellmate were then escorted to Lt. Durant's office where they were photographed, assessed medically, and escorted to the Special Housing Unit ("SHU"). White was charged with

2

a code 201 violation for fighting with another person. White was provided with a copy of the incident report.

On September 5, 2023, the Unit Discipline Committee ("UDC") held a hearing which White attended. During that hearing, White disputed that he had struck his cellmate and requested that the video be preserved. In light of the serious nature of the charge, the UDC referred the incident to a Disciplinary Hearing Officer ("DHO") for a hearing and recommended sanctioning White with the loss of good conduct credits and commissary restrictions if he was found guilty. That same day, White received notice of the disciplinary hearing before the DHO.

On September 15, 2023, Darrell Huff, the DHO for FCI–Cumberland, held a disciplinary hearing. Prior to the hearing, White was informed of the right have a representative at the hearing and to call witnesses, but he declined to have a representative or to call witnesses. He did, however, request that the DHO review the surveillance video. At the hearing, after DHO Huff read the incident report to White, White denied that he swung at his cellmate and asserted that he had only put his arms up. According to White, DHO Huff said that "while the video does not show me strike or attempt to strike my cellmate with a closed fist, it shows me raise my hands." Pet. ¶ 9. In his report, however, DHO Huff states that he reviewed the video footage and "observed [White] and [his cellmate] exchanging punches with one another as described in the body of the report." DHO Rep. at 3, Ans. Ex. 2 Att. D, ECF No. 7-2. Although the surveillance video shows footage from a camera located outside the cell and does not clearly show what happened in the cell, it shows, through a window in the cell door, an altercation between two individuals that is consistent with a fight in which both individuals engaged with punches.

DHO Huff found White guilty of the offense of "Fighting With Another Person, code 201," and sentenced him to 21 days of disciplinary segregation, the loss 27 days of good conduct credits,

3

and the loss of 120 days of phone and commissary privileges. *Id.* In his report, DHO Huff stated

to White:

> In this instance you chose to exchange closed fist strikes with [your cellmate]
> thus identifying yourself as a mutual participant in the hostile physical
> altercation and constituting the prohibited act. Your actions could not be
> overlooked or excused under any circumstances. While it may be true that [your
> cellmate] initiated the hostile physical encounter however your decision to
> respond with an offensive response identified you as a mutual participant in the
> hostile physical encounter. Self-defense is an action by which a person protects
> himself from any bodily harm arising out of an attack or an assault and is
> accepted on a case-by-case basis. An acceptable case for self-defense would
> have been that you chose to flee the area, or took no offensive stance or delivered
> no offensive strike. Accordingly, your denial did not outweigh the reporting
> officer's written account and it is the finding of the DHO that you committed the
> prohibited act as charged.

*Id.*

In a declaration submitted with Respondent's Answer, DHO Huff states that in reaching

his decision, he considered White's statement, the incident report, and the surveillance video, and

that he ultimately "gave greater weight to the reporting officer's written statement which . . . was

corroborated by video evidence." Huff Decl. ¶¶ 9–10, Ans. Ex. 2, ECF No. 7-2.

Although DHO Huff announced his decision at the end of the hearing, he did not complete

his report immediately. On December 12, 2023, White filed his first habeas petition relating to

this incident. According to White, he did so because DHO Huff had not timely produced the DHO

report, and prison staff had destroyed his mail when he initially tried to file an administrative

remedy complaint regarding the disciplinary proceeding. DHO Huff issued his report on

December 20, 2023, and it was delivered to White on January 2, 2024. On May 2, 2024,

exhaustion of administrative remedies was completed.

## DISCUSSION

In the Petition, White asserts that the disciplinary proceedings and sanctions violated his right to due process under the Fifth Amendment. First, he argues that he was not given proper notice of the factual basis for the charges against him because the incident report charged him with "striking or attempting to strike" his cellmate with a closed fist, but DHO Huff actually found that White was guilty because he had raised his hands. Pet. ¶ 18. Second, he argues that the DHO's finding violated due process because it relied on falsified evidence and effectively convicted him of exercising self-defense. Third, he asserts that his due process rights were violated because as a result of Huff's "failure to timely produce a DHO report," he "was not able to meaningfully appeal many of the sanctions imposed," in that he had already been subjected to disciplinary segregation and the loss of phone and commissary privileges. *Id.* ¶ 11.

## I.    Legal Standards

Under the Fifth Amendment, certain due process protections are required where an inmate faces the loss of a liberty interest, such as the possible loss or diminution of good conduct credits. See *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974); *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). These steps include (1) advance written notice of the charges of at least 24 hours; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing at which the prisoner has the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decisionmaker. *See Wolff*, 418 U.S. at 564–66, 570–71. If these procedural protections are provided, due process will be satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced."

5

*Hill*, 472 U.S. at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigr.*, 273 U.S. 103, 106 (1927)).

## II.   Notice

On the issue of notice, the record shows that White received written notice on August 28, 2023 when he received a copy of the incident report that referenced the charge of fighting with another person, code 201, well in advance of the September 5, 2023 UDC hearing and the September 15, 2023 DHO hearing. That report provided details of the evidence that would be relied upon in that it described the reporting officer's observations upon reviewing the surveillance video, including that he saw both inmates "swinging with closed fist punches." Incident Rep. at 1. The record also shows that at or before the UDC hearing on September 5, 2023, White received an additional written notice identifying the charge as "201 – Fighting with Another Person." Notice at 1, Ans. Ex. 2 Att. B, ECF No. 7-2. White's claim that he, in fact, had only raised his hands in self-defense is a dispute relating to the merits and does not change the fact that the record clearly demonstrates that he received notice of the specific charge of which he was found guilty.

## III.   The DHO Determination

White also argues that the disciplinary proceedings and determination violated due process because the DHO improperly relied on the false claim in the incident report that the surveillance video showed that he had punched back when, as he claims, he only raised his hands to defend himself. However, in considering whether a prison disciplinary proceeding satisfies due process, the Court does not reevaluate or reweigh the evidence. Rather, as discussed above, due process is satisfied if (1) the procedural protections identified in *Wolff* are provided; and (2) there was "some evidence" to support the final determination. *See supra* part I. As to the procedural requirements, the Court has already found that White received advanced written notice of the charge at issue.

6

*See supra* part II. White received a DHO hearing on September 15, 2023 at which, as is evident from the Acknowledgment of Rights Form signed by White, he had the right to call witnesses, present evidence, and have a staff member as a representative at that hearing. *See Wolff*, 418 U.S. at 566, 570. Although White was notified of those rights, he did not request a representative or present witnesses and requested only that the DHO view the surveillance video footage, which DHO Huff did. Further, DHO Huff was an impartial decisionmaker as he was in no way involved in the incident leading up to the disciplinary charge, and White does not claim otherwise. *See id.* at 571. Finally, DHO Huff's report constitutes the required written statement of the evidence relied on and the reasons for taking any disciplinary action. *See id.* at 564. The procedural requirements were therefore satisfied.

As for whether there was "some evidence" supporting the final determination and disciplinary action, *Hill*, 472 U.S. at 455, the DHO specifically stated in his report:

The DHO reviewed archived video footage at your request. The DHO observed you and [your cellmate] exchanging punches with one another as described in the body of the report.

In making this decision the DHO gave the greater weight of evidence to the reporting officer's written account than to your claim that you did not swing at him, you only put your arms up to keep from being struck. The reporting officer was specific detailing your observed behavior, which was further corroborated with the review of archived video surveillance footage of the incident in which you and [your cellmate] were observed striking each other in the head and upper torso area with closed fists which identifies the hostile physical altercation.

DHO Rep. at 3. Thus, the DHO's determination was based on the incident report and the DHO's own viewing of the surveillance video. Upon review of the surveillance video, the Court finds that while it provides only limited evidence because it consists of footage from outside the cell, it provides a limited view of the interior of the cell through a window in the cell door, and it shows an altercation consistent with a fight in which both individuals engaged with punches. The

7

evidentiary standard of "some evidence" to support a guilty finding was therefore also met. *See Hill*, 472 U.S. at 455. Finally, because the surveillance video has now been submitted to the Court and is consistent with the DHO's determination, White's claim that DHO Huff falsified the video evidence, in violation of *Edwards v. Balisok*, 520 U.S. 641 (1997), necessarily fails.

## IV.    Delay

White also asserts that DHO Huff's failure to issue his report until December 20, 2023, approximately three months after the hearing, violated due process because by that time he could not challenge some of the penalties imposed. Specifically, he asserts that the sanctions took effect immediately after the September 15, 2023 hearing, so by the time he received the report on January 2, 2024, he had already served the 21 days of disciplinary segregation, and almost all of the 120-day period without phone and commissary privileges had already run.

This argument fails for multiple reasons. First, because a loss of good conduct credits effectively extends the period of incarceration, it implicates a protected liberty interest and the right to due process. *See Wolff*, 418 U.S. at 557. By contrast, the imposition of disciplinary segregation does not alone implicate due process requirements absent a showing that the particular placement in segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 475, 477–78, 484–87 (1995) (finding that a disciplinary sanction of 30 days in disciplinary segregation did not implicate a protected liberty interest warranting due process protections). White has made no showing that the 21 days of disciplinary segregation at FCI–Cumberland was so atypical of ordinary disciplinary segregation so as to warrant an exception. Likewise, there has been no showing that loss of phone and commissary privileges causes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" so as to implicate due process. *See id.* at 484.

8

Second, as discussed above, White received all of the procedural protections required by *Wolff* in relation to the charges that led to the sanctions of disciplinary segregation and loss of phone and commissary privileges. Finally, where the Court has upheld the DHO's determination, White cannot show that the delay in the opportunity to appeal resulted in the imposition of an unjust punishment without due process.

Because White is not in state detention, and the Petition does not challenge the validity of his federal sentence, a certificate of appealability need not be addressed. *See* 28 U.S.C. § 2253(c)(1) (providing that a certificate of appealability is required to appeal from a final order in a habeas corpus proceeding challenging a state detention or the validity of a federal sentence under 28 U.S.C. § 2255).

## CONCLUSION

For the foregoing reasons, White's Petition for a Writ of Habeas Corpus will be DENIED. A separate Order shall issue.

Date: February 11, 2026

THEODORE D. CHUANG
United States District Judge